## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| LEILANI S. RICKARD, | |
| Plaintiff, | |
| vs. | CIV. ACTION NO. _____ |
| COSTCO WHOLESALE CORPORATION, | **JURY TRIAL DEMANDED** |
| Defendant. | |

## COMPLAINT FOR DAMAGES

COMES NOW Plaintiff Leilani S. Rickard, by and through the undersigned Counsel of Record, and hereby files this Complaint for Damages against Defendant Costco Wholesale Corporation, respectfully showing the Court as follows:

## JURISDICTION AND VENUE

### 1.

Plaintiff Leilani S. Rickard commences the above-captioned case pursuant to: (1) Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq.*, ("Title VII") for discrimination based on race and national origin, as well as retaliation; (2) the Civil Rights Act of 1866, 42 U.S.C. § 1981, as amended by the Civil Rights Act of 1991, ("Section 1981") for discrimination based on race and

national origin, as well as retaliation; and (3) laws of the State of Georgia for intentional infliction of emotional distress, as well as negligent retention and supervision.

2.

This United States District Court for the Northern District of Georgia ("Court") is vested with original jurisdiction over the Title VII and Section 1981 claims pursuant to 28 U.S.C. § 1331.

3.

This Court is vested with supplemental jurisdiction over the State law claims, which arise from the same nucleus of operative facts as the Federal claims, pursuant to 28 U.S.C. § 1367.

4.

Venue is proper in the Northern District of Georgia, Atlanta Division, pursuant to 28 U.S.C. § 1391(b), because Defendant is located, and the unlawful conduct forming the basis of this matter occurred, in said district and division.

5.

Plaintiff satisfied administrative prerequisites to institute this matter. Specifically, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity ("EEOC") within 180 calendar days from the day the retaliation took

place (Charge No. 410-2020-02855). Moreover, Plaintiff timely commenced the above-captioned case within ninety (90) days of receipt of the Notice of Right to Sue, dated February 1, 2021.

## PARTIES

6.

Plaintiff Leilani S. Rickard ("Rickard" or "Plaintiff") is a fifty-eight (58) year-old Filipino-Asian American, who is a citizen of the United States and resident of the Northern District of Georgia, subject to this Court's jurisdiction.

7.

At all times relevant to this action, Rickard was an employee of Costco Wholesale Corporation within the meaning of, among other laws, Title VII and Section 1981.

8.

Defendant Costco Wholesale Corporation ("Costco" or "Defendant") is a Washington profit corporation, registered to do business in the State of Georgia and subject to the jurisdiction of this Court, with a principle office located at P.O. Box 35005, Seattle, Washington 98124-3405.

9.

Costco operates several wholesale warehouses, including, but not limited to, the warehouse located at 3980 Venture Drive, Duluth, Georgia 30096 ("Duluth Warehouse")

10.

Costco is an "employer" within the meaning of Title VII, engaging in an industry affecting commerce and employing more than fifty (50) persons for each working day in each of twenty (20) calendar weeks in the current or preceding calendar year.

11.

Costco may be served with process through its Registered Agent, C T Corporation System, 289 S. Culver Street, Lawrenceville, Georgia 30046-4805.

## **FACTUAL ALLEGATIONS**

12.

Plaintiff re-alleges and incorporates each and every preceding Paragraph of the above-captioned complaint as if set forth fully herein.

13.

Costco is a United States multinational corporation (fifth largest retailer in the world) operating a chain of membership-only big-box retail stores, including the Duluth Warehouse.

14.

Rickard graduated from the University of Mindanao located in Davao City, Philippines, with Bachelor of Science in Commerce, major in Accounting.

15.

Prior to working for Costco, Rickard held several professional management positions including, but not limited to, Franchise Manager with Avon Cosmetics, Inc., Account Manager, with CAP Health Maintenance Org., Area Manager with Time Is Gold Healthcare System, Inc., and Team Leader with E&M Concession, USA.

16.

In addition to financial education and professional management experience, Rickard also has several professional accomplishments, including, but not limited to, multiple Collection Leader Award from Avon Cosmetics, Inc., Top Sales Producer of the Month Award from CAP Health Maintenance Org., and becoming a Licensed Insurance Agent.

17.

Beginning on or about November 13, 2014, Rickard became employed by Costco at the Duluth Warehouse as a seasonal employee.  Since May 15, 2015, Rickard has been a permanent part-time Costco employee.  During the course of employment, Rickard has filled several positions at the Duluth Warehouse, including, but not limited to, Stocker in the Clothing department, Cashier in the Front End Department, Vault Clerk in the Administration Department, and Marketer in the Membership Department.

18.

At all relevant times, Rickard diligently performed all tasks while meeting or exceeding all performance expectations.  For example, Rickard has received excellent performance reviews and has exhibited stellar attendance.  Moreover, Rickard was elected as the 2019 Treasurer of the Employees Club.  Due to Rickard's sales leadership, the Duluth Warehouse was number one in Costco credit card sales in the District for several campaigns.

19.

During Rickard's course of employment, Costco has generally employed a promote-from-within strategy—Costco rarely hires managers/supervisors from outside the company.  Rather most members of management begin in part-time,

entry-level positions in stocking and/or customer service.  After a period of diligent performance, management identifies employees who have demonstrated the ability to take on additional duties and responsibilities, as well as indicated a desire to progress into management.  Once an employee decides to make a career in retailing with Costco, it is determined whether the employee would like to pursue purchasing or operations.  To that end, the employee is generally afforded an opportunity to receive training and perform duties within the chosen path before being promoted into management.  As Costco Found Jim Sinegal stated, "We would never dream of hiring a manager for one of our Costcos from outside the company."

20.

After approximately one (1) year of employment, Rickard began repeatedly expressing a desire and interest in being promoted into management.  In this regard, Rickard applied for multiple supervisor and management positions at the Duluth Warehouse.  Whenever asked about long term Costco goals during interviews, Rickard always expressed a desire to become a Warehouse Manager, which is why Rickard constantly sought professional opportunities in different Departments. Moreover, Rickard often expressed the desire to obtain a management position to several managers and supervisors in the Duluth Warehouse.

21.

In 2016, Rickard applied for a vacant supervisor position in the Produce Department.  Eric Myers ("Myers")—Caucasian Assistant General Manager—interviewed Rickard for the position.  Despite Rickard's education and years of management experience, Meyers selected Robert Tacopina ("Tacopina")—Caucasian Stocker and Forklift Operator—for the position.  When Rickard questioned the denial of her application, Myers stated that, despite Rickard's management experience, Tacopina was selected on the basis of seniority.

22.

In March 2016, Rickard submitted a discrimination complaint to the Regional Office related to the selection of Julie Scott ("Scott") (Caucasian-American) as Hearing Aid Attendant by Ben Millwood ("Millwood") (Caucasian-American), Hearing Aid Manager, and Bruce Scruggs ("Scruggs") (Caucasian-American), Warehouse Manager.  Specifically, before the position was posted, Millwood and Scruggs trained Scott for the position while denying Rickard similar training. Ultimately, Rickard received a letter, stating the selection of Scott was proper.

23.

On or about June 4, 2016, Rickard filed, with the EEOC, a Charge of Discrimination, alleging Costco discriminated based upon race and national origin

related to the failure to promote.  While the EEOC was investigating the Charge, Scruggs left Costco without any explanation.  However, following the Charge, Costco took no remedial action based upon the alleged discrimination.

24.

In or about December 2016, Seth Shores—Caucasian-American Front End Manger—promised to train Rickard as a Cashier.  However, whenever Rickard requested Cashier training, Shores would give an excuse not to train Rickard.  Rather than train Rickard, a supervisor or manager would send Rickard to clean a table or sweep a floor while training other employees.

25.

In or about January 2017, Rickard complained to Robinson about Jones' promotion of Costco seasonal employees, Rachel Holden ("Holden") (Caucasian-American) and Stanley Moisley ("Moisley") (African-American), in violation of Costco's Employee Agreement.  Additionally, during a Journey Meeting, Rickard verbally complained to Yoram Rubanenko ("Rubanenko"), Costco Vice President, Southeast Region, about the improper promotions of Holden and Moisley.  And, June 9, 2017, Rickard sent Rubanenko a letter, complaining about the improper promotions.

26.

In or about February, 2017, Rickard submitted, to Costco Human Resources, complaints against Derrick Robinson ("Robinson") (African-American Warehouse Manager) and Keanna Jones (African-American Membership Manager) based upon the promotion of Holden (Caucasian) and Moisley (African-American), in violation of Costco's Employee Agreement. After Human Resources failed to respond, on or about March 20, 2017, Rickard followed-up with Human Resources concerning the complaint. However, Human Resources again failed to respond or take any remedial action based upon Rickard's complaint.

27.

In or about March 2017, Rickard was assigned to the Front End, where Seth Shores—Caucasian-American Front End Manger—denied Rickard's requests for Cashier training while other employees assigned to the Front End, including, but not limited to, Buphinder Rani (Indian), Holden (Caucasian-American), Inisa Ibricic (Bosnian), and Rachel Tavares (Latina), received Cashier training.

28.

In or about May 2017, Rickard applied for a full-time Front End Supervisor position at the Duluth Warehouse. On or about May 22, 20217, Shores interviewed Rickard for the position. During the interview, Shores asked, knowing that Rickard

had been denied training, if Rickard operates the registers at the Front End.  When Rickard stated that, despite repeated requests, no one would provide Rickard with training, Shore simply responded, "When it is not busy."  Of course, when Rickard followed-up with Shore about the promised training, Shores consistently responded, "Next week."  Despite Rickard's decades of managerial experience and multiple roles at the Duluth Warehouse, Rickard's application was denied.  Instead, Chelsea Zeller ("Zeller")—Caucasian American with no cashier experience at Costco—was selected for the Front End Supervisor position.

29.

On or about June 9, 2017, Rickard also submitted a complaint about retaliation suffered at the hands of Robinson to Rubanenko.  On July 19, 2017, Rubanenko called Rickard and stated that the promotions of Holden and Moisley were not improper while promising that Robinson would train Rickard to be a Front End Cashier.  At approximately 5:30PM on July 19, 2017, Shores directed Rickard to the Front End, where a co-worker trained Rickard for approximately thirty (30) minutes, however, by the end of the night, Rickard was again checking customer receipts at the Warehouse exit, where Robinson angrily confronted Rickard.  Despite Rubanenko's instructions and intervention, Costco and management at the Duluth Warehouse continued a subtle retaliatory and intimidation campaign.

30.

In addition to the complaint to Rubanenko, on or about June 27, 2017, Rickard filed, with the EEOC, another Charge of Discrimination, alleging discrimination based on race due to the failure-to-promote and lack of training, however, when Rubanenko promised Rickard that Robinson would ensure Rickard received additional training and professional opportunities, Rickard decided not to pursue the Charge of Discrimination.

31.

In July 2017, Erica Tynes ("Tynes")—African-American employee hired in 2016 in the Clothing Department—was re-assigned to the Membership Department, where she was trained as a Refund Cashier.  Because the position was not posted or advertised, Rickard also asked Jones and the Membership Supervisor, Shantell Washington ("Washington") (African-American), to also receive training as a Refund Cashier.   In this regard, Rickard stated that, if the position were posted/advertised, Rickard would have applied for the position, which was a higher pay grade.  In response, Jones and Washington asserted excuses for the refusal to provide Rickard with training, including, but not limited to, "I will train you after the Holiday Season," "When I come back from leave," or "It is not as easy as you see."  After other employees complained that the position was not advertised/posted,

a sign-up sheet for cross-training appeared on a board next to the Duluth Warehouse office.  After Rickard applied for the cross-training on or about August 31, 2017, Rickard received a letter stating that the position was cancelled.  Nevertheless, several non-Filipino-Asian employees, including, but not limited to, Hyungjun Kang (Korean), Tiffany Wilson (Puerto Rican), Holden (Caucasian-American), Lisa Huerta (Latina), Steve Grandison (African-American), Aolani Rivera (Latina), and Michelle Vu (Vietnamese), received training after the position was *purportedly* cancelled.  During the subsequent years, Rickard repeatedly requested to received cross-training as a Refund Cashier, however, Jones and Washington have refused to train Rickard.

32.

On July 21, 2017, Jones assigned, without any prior training, Rickard to security in the Duluth Warehouse's parking lot.  At approximately 11:00PM, a vehicle slowly passed Rickard on multiple occasions, prompting Rickard to notify the Managers, Luis Hernandez Vega ("Vega") and Shores, who stated that they would contact law enforcement.  After the parking at the rear of Rickard's vehicle in a threatening manner, the vehicle followed Rickard to the front of a nearby establishment.  Despite promises, neither Vega nor Shores contacted law enforcement.  When discussing the incident the following day, neither Vega nor

Shores showed any concern for Rickard's safety.  And in response to Jones's inquiry, the Duluth Warehouse's security officer, Leonor Cortez, stated that he was never involved in a similar incident at the Warehouse.

33.

Beginning in September 2017, Rickard was assigned as a Vault Clerk at the Duluth Warehouse.  Rather than being promoted to Vault Clerk, in March 2018, Rickard was promoted to Cashier.  When Rickard inquired why she was not promoted to Vault Clerk, Luis Alvarez—Latino Assistant Store Manager—simply responded, "That's the position you have."

34.

From in or about June 2018 until in or about July 2019, Rickard was scheduled to work approximately 38-40 hours per week as a Membership Marketer in the Membership Department—Jones requested this reassignment based upon Rickard's excellent sales performance.  Although Rickard requested to be re-classified full-time employee, resulting in additional compensation and benefits, Veronica Griffiths (Caucasian-American Payroll Clerk), Jones, and Shores each denied Rickard's requests.  However, during this period, non-Filipino employees, including, but not limited to, Kang and Cohren Desamour ("Desamour") (African-American Assistant Front End Manager who began working at Costco in 2014), were promoted to full-

time employment.  After Rickard complained about Jones' refusal to reclassify Rickard as a full-time employee, Rickard's hours were reduced to twenty-five (25) hours per week.

35.

In or about July 2018, Rickard again applied for a full-time Front End Supervisor position at the Duluth Warehouse, where Alvarez interviewed Rickard for the position.  Despite Rickard's years of managerial experience and multiple roles at the Duluth Warehouse, Rickard's application was denied.  Instead, Jose Torres ("Torres")—Latino/Hispanic American and former Bakery Manager who was demoted to Cashier—was selected for the position.  When Rickard questioned the denial of her application, Landria Walker (African-American Manager) stated that Torres was a "seasoned" employee while disregarding Rickard's management experience because it was with "previous companies."

36.

In February 2019, Rickard applied for a vacant Sales Audit position at the Duluth Warehouse.  After interviewing Rickard for the position, Beatrice Livingston—African-American Staff Manager—and Myers advised Rickard that the position was given to Steve Scruggs ("Scruggs")—Caucasian-American employee from the Southeast Regional Office with no experience in the vault or sales audit —

who *purportedly* had more seniority than Rickard.  However, Scruggs was given the position based upon the recommendation of Guy Belemonte—Caucasian-American and Vice President.

### 37.

Although Rickard's repeated requests for Refund Cashier training were denied, while Rickard was on vacation in March-April 2019 Kang (Korean) and Wilson (African-American and Puerto Rican) were trained as Refund Cashiers. When Shirley Brown ("Brown") asked Jamie Wilson, Caucasian, Temporary Membership Supervisor, why Rickard who had been working in Membership longer than Wilson and Kang did not also receive Refund Cashier training, Jamie was silent. Subsequently, Jamie wrote-up Brown twice within a 10-day period.

### 38.

In May 2019, another Refund Cashier position became vacant at the Duluth Warehouse.  Rickard applied for the vacant Refund Cashier position.  Despite Rickard's years of management experience and multiple roles at the Duluth Warehouse, Wilson—African-American from Puerto Rico—was selected for the position.  When questioned about the denial of Rickard's application, Jones stated that Wilson had seniority and knowledge about the position—Wilson received cross-training while Rickard was denied the opportunity to receive training.

39.

Again, in June-July 2019, Rickard applied for a vacant Front-End Supervisor position.  Like before, Shores interviewed Rickard for the position.   Although Rickard had significant Front-End experience at the Duluth Warehouse, Kathryn Wilcoxson ("Wilcoxson")—Asian-American Front-End Assistant who was hired in May 2018—was selected for the position. When Rickard inquired about the denial of her application, Shore stated, "I know who got the position but I can't tell you.  I have to ask Eric first."  Approximately a week later, Shore responded, "I think Cathy got it, I will ask Eric."  When Rickard inquired about the denial of her application, Shores and Myers, stated Wilcoxson had management experience outside of Costco. However, when Rickard applied for the Front-End Supervisor position in May 2017, Rickard's management experience outside of Costco was disregarded.   When Rickard reminded Shores of Rickard's management experience on her resume and Rickard's seniority status, Shores and Myers responded, "Try to apply again."

40.

In July 2019, Rickard again requested Refund Cashier training.   Jones responded, "Ask the refund clerks to train you."  When Rickard asked Jones to instructed the Clerks to provide training, Jones replied, "They know."  However, none of the Clerks would ever provide Rickard with the requested training.

41.

Again, in July 2019, Rickard applied for a vacant full-time Front-End Supervisor position. Jones (not the Hiring Manager) and Shores (leaving the Duluth Warehouse in 2 days) interviewed Rickard for the position. When Rickard inquired about the position on or about September 27, 2019, Myers first stated, "The position is filled." However, when Rickard asked about the selected candidate, Myers replied, "No one, we are still in the selection process," before quickly leaving the area. Finally, on October 1, 2020, Robinson took Rickard into his office, where Robinson stated, "You did not get the job, Leilani. And I want a supervisor that can help me achieve my goal." When Rickard asked about the selected candidate and the denial of Rickard's application, Robinson stated, "We are still choosing" and "Separate yourself from others in a positive way—Be top here." Rickard then reminded Robinson that Rickard cannot achieve top ranking in any Department because she was assigned to several different areas. On October 8, 2019, it was announced that Jennifer Schmid—Latino Front-End Assistant hired in August 2018 and working with the Cart Crew—was selected for the position.

42.

On November 8, 2019, Rickard sent Costco's General Counsel a letter, wherein Rickard complained that, following her complaints concerning unlawful employment practices, Robinson prevented Rickard from obtaining full-time employee status, denied promotions, transfers, and professional assignments, as well as other discriminatory and retaliatory conduct.

43.

Again faced with Costco's failure to promote or re-classify Rickard while promoting and reclassifying obviously lesser-qualified Caucasian and African-American employees, on or about January 21, 2020, Rickard filed, with the EEOC, a Charge of Discrimination, alleging discrimination based on race and national origin, as well as retaliation. Costco responded, denying any unlawful employment practices. On February 1, 2021, the EEOC issued the Dismissal and Notice of Rights.

44.

On February 11, 2020, Rickard applied for another Front End Supervisor position. Natasha Mallace ("Mallace") (Front End Manager) interviewed Rickard for the position. Despite Rickard's superior experience, education, and professional

performance, the position was given to Leslie Amaya ("Amaya")—Latina Food Court employee hired in 2016 at another Warehouse.

45.

On April 7, 2020, Steve Powers, VP of Operations, ("Powers") responded to Rickard's November 8, 2019 complaint.  According to Powers, an unspecified investigation did not substantiate Rickard's complaints.  Although stating, "You have some real strengths and both the company and your local management team value your contributions," Powers advised Rickard to work hard and keep a positive attitude.  Costco failed to address Rickard's concerns or take any remedial action.

46.

Whenever Rickard complained, Defendant subjected Rickard to retaliation. For example, on April 14 and 24, 2020—approximately two (2) weeks after Powers responded to Rickard's November 8, 2019 complaint, for the first time, Rickard was written-up twice by unknown Front-End Supervisors—management refused to disclose the sources—for seven (7) *purported* items/incidents.  Similarly, although work in the Vault requires approximately five (5) hours, whenever Rickard was assigned to the Vault, Mallace would only afford Rickard 3.5 hours and then harass and criticize Rickard for failing to complete the work.  Although Rickard was routinely assigned to clean freezers and the bathroom, the other non-Filipino

Cashiers were not required to complete these tasks. Similarly, although Cashiers were routinely assigned Helpers, the Front-End Managers rarely assigned Helpers to Rickard when she performed as a Cashier. Rickard's 2020 performance evaluation was negative and stated that Rickard needed to scan faster despite the fact that Rickard was rarely assigned Helpers and was still one of the top scanners. On July 22, 2020, Robinson had Rickard written-up for a mistake Rickard corrected before the customer left Rickard's register—Cashiers are typically not written-up unless the customer reaches the exit before a mistake is corrected.

47.

On August 27, 2020 Rickard applied for the Sales Audit Cross-Training position. Again, Myers interviewed Rickard for the position. Approximately two (2) weeks later, Myers informed Rickard that, because no other employee applied, Rickard was selected for the position. However, when Rickard asked about training for the position about a week later, Myers replied, "The Sales Audit cross-training was cancelled."

48.

Each time Costco rejected Rickard's applications, Rickard was disregarded and Costco selected non-Filipino-Asian, lesser-qualified candidates.

49.

As a longtime Costco employee with experience in multiple departments and a prior management experience, as well as a Bachelor of Science in Commerce, Rickard was qualified for each position.

50.

Including Rickard, there were only two other Filipino-Asian employees at the Duluth Warehouse during the course of Rickard's employment.  Juanita Caday was employed as a Stocker in the Clothing Department, Scott Gabac was hired as an Assistant Manager following Rickard's complaints of discrimination, and a Filipino-Asian Tire Technician, who resigned following a demotion.  None of the Filipino-Asian employees were promoted at the Duluth Warehouse.

51.

As a result of unfair, discriminatory, and retaliator treatment, Rickard has suffered the indignity of race and national origin discrimination, the invasion of right to be free from discrimination, humiliation, emotional pain, mental distress, inconveniences, and mental anguish, for which Rickard is entitled to recover.

## COUNTS I & II
## RACE AND NATIONAL ORIGIN DISCRIMINATION
## IN VIOLATION OF TITLE VII AND SECTION 1981

52.

Rickard re-alleges and incorporates by reference each of the foregoing paragraphs as if fully restated herein.

53.

Title VII and Section 1981 prohibit employers from discriminating against an employee based upon, *inter alia*, race, ethnicity, and/or national origin.

54.

As a Filipino-Asian American female, Rickard is a member of a protected class under Title VII and Section 1981.

55.

At all relevant times, the relationship between Rickard and Costco was a relationship of "employee" to "employer" under Title VII and Section 1981, such that a cause of action exists where discrimination on the basis of race and national origin is alleged to be the cause of an adverse actions directed to the employee by the employer.

56.

Rickard's education, experience, skill, and performance exceeded that of other non-Filipino-Asian, similarly situated Costco employees, including, but not limited to, Tacopina, Scott, Holden, Moisley, Zeller, Torres, Scruggs, Wilson, Wilcoxson, Amaya, and the other employees at the Duluth Warehouse afforded professional opportunities denied to Rickard.

57.

At all times relevant to this action, Costco acted by and through its agents and employees, including, but no limited to, Jones, each of whom acted in the course and scope of their employment with and for Costco.

58.

Despite Rickard's diligent work performance, Costco intentionally discriminated against Rickard on the basis of race and national origin by, among other things, subjecting Rickard to unfair treatment compared to similarly-situated non-Filipino-Asian employees, repeatedly declining to promote Rickard, denying Rickard the same opportunities, training, and professional assistance as similarly situated non-Filipino-Asian employees, requiring Rickard to perform duties and tasks not required of similarly-situated non-Filipino-Asian employees, as well as other unlawful actions based solely upon race and/or national origin.

59.

At all relevant times, Rickard diligently performed while employed by Costco and was qualified for the supervisor, cashier, vault, and sales positions awarded to lesser-qualified and less-experienced non-Filipino-Asian employees.

60.

Consequently, Rickard was treated less-favorably than similarly-situated non-Filipino-Asian Costco employees in violation of Title VII and Section 1981.

61.

Defendant's conduct adversely impacted the terms, conditions, and privileges of Rickard's employment.

62.

Defendant's actions constitute unlawful race and national origin discrimination in violation of Title VII and Section 1981.

63.

Defendant has willfully and wantonly disregarded Plaintiff's statutory rights and Defendant's discrimination was undertaken in bad faith.

64.

As a direct and proximate result of Costco's unlawful employment practices, which were intended to cause Rickard harm and/or were committed with reckless

disregard of the harm caused to Rickard, in derogation of Rickard's Federally-protected rights, Rickard has suffered and continues to suffer the indignity of race and national origin discrimination, the invasion of his right to be free from race and national origin discrimination, humiliation, emotional pain, mental distress, inconveniences and mental anguish.

65.

Costco's intentional and illegal conduct entitles Rickard to compensatory damages, as well as any and all other remedies available under Title VII and Section 1981.

66.

Costco's actions with regard to Rickard demonstrate willful misconduct, malice, fraud, wantonness, oppression, and a complete lack of care entitling Rickard to an aware of punitive damages to deter, punish, and penalize Costco for and from similar future conduct.

**COUNTS III AND IV**
**RETALIATION**
**IN VIOLATION OF TITLE VII AND SECTION 1981**

67.

Rickard re-alleges and incorporates by reference each of the foregoing paragraphs as if fully restated herein.

68.

Title VII and Section 1981 prohibit employers from retaliating against an employee who opposes an employment practice prohibited by, or exercise or attempt to exercise rights, under Title VII and Section 1981.

69.

As a Filipino-Asian American female, Rickard is a member of a protected class under Title VII and Section 1981.

70.

During the relevant period, the relationship between Rickard and Costco was an employer-employee relationship within the meaning of Title VII and Section 1981, such that a cause of action exists where retaliation on the basis of opposing and/or reporting discrimination is alleged to be the causative agent of adverse employment actions directed to Rickard by Defendant.

71.

During the course of Rickard's employment, Costco, including Defendant's agents and employees, unlawfully and knowingly discriminated against Rickard based upon, among other things, race and national origin in violation of, *inter alia*, Title VII and Section 1981.

72.

Rickard complained to Costco employees and submitted complaints about unlawful employment practices based upon race and national origin.

73.

Rickard also submitted Charges of Discrimination, opposing unlawful employment practices based upon, among other things, Rickard's race and national origin.

74.

Following Rickard's complaints and Charges of Discrimination concerning, among other things, unlawful employment practices based on race and national origin, Defendant took additional adverse employment actions against Rickard, including, but not limited to, failing to promote Rickard, reducing Rickard's hours, assigning additional duties and tasks, denying professional assistance, opportunities,

and training, as well as engaging in harassment and bullying, in violation of, *inter alia*, Title VII and Section 1981.

75.

The effect of Defendant's actions has been to suspend and deprive Rickard of an employment position, as well as loss income in the form of wages, prospective retirement benefits, social security, and other benefits due Rickard because of the exercise of Rickard's Federally-protected rights.

76.

Defendant's adverse employment actions against Rickard constitute unlawful retaliation against Rickard in violation of, *inter alia*, Title VII and Section 1981.

77.

Defendant's retaliatory actions were willful, deliberate, and intended to cause Rickard harm and/or were committed with reckless and wanton disregard of the harm causes to Rickard in derogation of Rickard's Federally-protected rights.

78.

Defendant's discriminatory and retaliatory actions were undertaken in bad-faith.

79.

The retaliation to which Rickard was subjected by Costco entitle Rickard to all appropriate relief afforded under the law.

80.

As a result of Defendant's intentional and unlawful actions, Rickard has suffered lost compensation and other benefits of employment, physical and emotional distress, inconvenience, humiliation, damage to her reputation, other indignities, as well as past and future pecuniary losses.

81.

Defendant's actions with respect to Rickard have demonstrated willful misconduct, malice, fraud, wantonness, oppression, and a complete want of care, and thus, Rickard is entitled to an award of punitive damages to deter, punish, and penalize Defendant for and from similar future conduct.

## COUNT V
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## IN VIOLATION OF GEORGIA LAW

82.

Rickard re-alleges and incorporates each and every preceding paragraph of the Complaint as if set forth fully herein.

83.

Despite Rickard's years of stellar and diligent performance at the Duluth Warehouse, Rickard was denied employment positions, professional assistance and training, required to perform additional tasks and duties, as well as subjected to other harassment and bullying based upon Rickard's complaints of discrimination and unlawful employment practices.

84.

Costco's, including Defendant's agents and employees, statements, conduct, and behavior towards Rickard were intentional and/or reckless, as well as extreme and outrageous, causing Rickard severe shame, humiliation, embarrassment and emotional distress of a nature that no reasonable person can endure.

85.

Defendant's statements, conduct, and behavior, including those of Costco employees and agents, towards Rickard demonstrate, among other things, a "retaliatory animus."

86.

At all relevant times, Costco and Rickard had a special, employer-employee relationship, wherein Defendant exercised control over Rickard.

87.

Costco knew or should have known that such conduct would result in severe emotional distress by Rickard.

88.

As a result of Costco's conduct, Rickard has and will continue to suffer severe emotional and other damages for which Rickard is entitled to recover.

## COUNT VI
## NEGLIGENT RETENTION AND SUPERVISION
## IN VIOLATION OF GEORGIA LAW

89.

Rickard re-alleges and incorporates by reference each of the foregoing paragraphs as if fully restated herein.

90.

As a result of the actions taken by Costco's employees, Rickard suffered, among other things, discrimination based on race and national origin.

91.

Costco owed Rickard a duty to hire, retain, and supervise employees who would lawfully conduct themselves and not engage in discriminatory or tortious conduct.

92.

By negligently retaining and supervising its employees, including, but not limited to, Robinson, Jones, Shores, Myers, Zeller, Washington, and Wallace, Costco breached its duty to hire, retain, and supervise an employee who would lawfully behave.

93.

Costco knew or, in the exercise of ordinary diligence, should have known of the propensity of its employees, including, but not limited to, Robinson, Jones, Shores, Myers, Zeller, Washington, and Wallace, to engage in unlawful conduct against Rickard.

94.

Additionally, by failing to engage in any corrective or remedial action, Costco ratified, condoned, and/or adopted its employees' unlawful conduct.

95.

As a direct and proximate result of Costco's negligent retention and supervision of its employees, as well as the failure to take any remedial or corrective action with respect to the known unlawful actions taken by Costco employees, Rickard suffered damages.

96.

Costco's negligent conduct entitles Rickard to compensatory damages, as well as any and all other remedies available under the law.

## PRAYER FOR RELIEF

**WHEREFORE**, Rickard respectfully requests that this Court:

(1)   Direct the Clerk of the Court issue summons and original process, served upon Defendant and any other person/entity the Court deems necessary in accordance with the law;

(2)   Grant declaratory judgment that Plaintiff's rights under Title VII and Section 1981 were violated;

(3)   Grant an injunction prohibiting Defendant from engaging in such unlawful conduct in the future;

(4)   Award Plaintiff compensatory damages for all injuries suffered as a result of Defendant's unlawful conduct;

(5)   Award appropriate back pay, including, but not limited to, reimbursement for lost income, bonuses, pension, social security, and other benefits in an amount proven at trial;

(6)   Award liquidated damages equal to back pay and lost benefits based upon Defendant's willful violations of the Title VII and Section 1981;

(7)   Award punitive damages in an amount reasonable and commensurate with the harm done and calculated to be sufficient to deter such conduct in the future;

(8)   Award pre-judgment interest on any monetary award;

(9)   Grant a trial by jury as to all triable issues of fact;

(10)   Award attorney's fees, costs, and disbursements

(11)   Plaintiff's attorneys' fees, costs, and disbursements; and

(12)   Award such further and additional relief as may be just and appropriate.

Respectfully submitted, this 22nd day of April, 2021.

MOLDEN & ASSOCIATES

*/s/ Regina S. Molden*
REGINA S. MOLDEN
Georgia Bar No. 515454
T. ORLANDO PEARSON
Georgia Bar No. 180406
YIYING ZHANG
Georgia Bar No. 798231
Peachtree Center – Harris Tower, Suite 1245
233 Peachtree Street, NE
Atlanta, Georgia 30303
(404) 324-4500
(404) 324-4501 (facsimile)
Email:  rmolden@moldenlaw.com
Email:  topearson@moldenlaw.com
Email:  azhang@moldenlaw.com

*Counsel for Plaintiff Leilani S. Rickard*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| LEILANI S. RICKARD, | |
| Plaintiff, | |
| vs. | CIV. ACTION NO. _____ |
| COSTCO WHOLESALE CORPORATION, | **JURY TRIAL DEMANDED** |
| Defendant. | |

## LOCAL RULE AND SERVICE CERTIFICATION

The undersigned certifies that this document has been prepared in accordance with the Local Rules and that the foregoing **Complaint for damages** has been filed with the Clerk using the CM/ECF system which will notify to the attorney(s) of record.

Respectfully submitted, this 22nd day of April, 2021.

MOLDEN & ASSOCIATES

*/s/ T. Orlando Pearson*
T. ORLANDO PEARSON
Georgia Bar No. 180406